We'll proceed with the next argument for today, 2019-30992, Violet Dock Port, Inc. v. Drew M. Heaphy, et al. You may proceed, Mr. Hastings. We can't hear you. You're on mute. I've unmuted him. Okay, he's back on mute again. Let's start over. Mr. Hastings, you're showing with the red mute, so you need to get off of the red mute. You're on mute, sir. Your Honor, is that working? That's fine. Sorry about that. May it please the Court, the language of the Fifth Amendment is very clear. When government takes private property for a public purpose, the government must pay for the property. Mr. Hastings, you're proceeding under pursuant to Section 1983. Of course, it's not a substantive rights statute per se. It's simply a gateway into federal court, a procedural statute more than substantive. And under that, you've got to show a violation of a federal right to get any recovery. I'm sorry, 1983 just let you into the courthouse. Then you've got to show us a substantive violation. And is it your contention that the substantive violation the Fifth Amendment taking in this case is the fact they haven't paid your judgment? Is that boil it down that simply? Your Honor, not that simply, but that is part of it. The violation is the violation of the just compensation clause, which here is government not paying a judgment. We have physical property taken in 2010, and that gives rise to a right of compensation. It took eight years of litigation to quantify that value. But the problem is the Fifth Amendment doesn't just require a paper judgment as this court recognized in the bought case. What is your authority to say that the failure to pay a judgment is a standalone Fifth Amendment taking in your honor? It's not a Fifth Amendment requires payment. It doesn't require a piece of paper. This court involved recognized that the Fifth Amendment requires payment. What cases held there? Well, Your Honor, I believe Vaught is one. However, there are additional cases, for example, about our opinion involved. Yes, Your Honor. I'll just point out lightly that I was surprised you didn't cite your blue brief. I'm sorry, Your Honor. I was surprised that you didn't cite our opinion in your blue brief. Your Honor, I apologize. I thought we had cited the Vaught opinion in the in the blue brief. I know we've decided it in the in the reply brief, but your honors, as far as compensation goes, even going back to the 18 hundreds in the sweet versus Rochelle case that is cited in our briefing, the U. S. Supreme Court has talked about the Fifth Amendment, and it's saying it means that there must be payment without undue delay. And this is a quote from the Supreme Court in the 18 hundreds, which can be enforced. That is collected by judicial process. The film. Why don't you? Isn't there some Louisiana judicial process you can use? Your Honor, there might satisfaction of judgment. Your Honor, there might still be Louisiana processes. But after Nick, we do not need to follow those processes. Well, that's the way you chose to hold on. You chose to do that. We just says that you don't have to exhaust. I understand that you had no choice at the time, but the point is you actually filed a Louisiana proceeding and you won. I'm not sure this exhaustion analysis works when you win the case. Judge Ho, I respectfully disagree. Violet Dockport did not file a Louisiana proceeding. Saint Bernard Hort filed a Louisiana proceeding, which resulted in Violet having to assert his objections to the taking. We did not pick Louisiana as a forum back in 2010. I think the point the point still holds all that we know from Nick is that you don't have to exhaust. But I guess I'm just kind of curious. Normally, an exhaustion doctrine analysis applies because you have to go through a certain proceeding, lose, and then come to federal court. Here, as I understand it, you actually won. You have a state court victory. You just want to enforce it. Isn't that right? We do want to enforce it, Your Honor. And in Williamson County, even before Nick, page 195, the U.S. Supreme Court recognized when a party goes through the state procedures but is denied compensation, which is what has happened here, there is a federal claim. Even Williamson County recognized it. Post Williamson County, post Nick, if there's two avenues to go forward for collection, Nick says we do not have to exhaust any more state remedies. We spent eight years in the Louisiana courts only to get a judgment that is a piece of paper that St. Bernard will not pay. I want to focus on this. What is the evidence that they are refusing to pay as opposed to simply asking you to go through the Louisiana process? Your Honor, first, we're on a motion to dismiss, so I will focus on the pleadings. But the pleadings, even if we filed it today, would be the exact same. We have in January 2018 a Louisiana Supreme Court decision saying there's going to be a new compensation decision being made. In September of 2018, the Louisiana Fourth Circuit tells St. Bernard Court that there is more than $12 million at that time of additional compensation plus interest and attorney's fees. We are now here today, no closer to getting a payment on that judgment, which is now up to $22 million. $950,000 in interest has accumulated on paper since July when this lawsuit was filed. The record, and we've alleged in paragraph 29 of our petition, our complaint, St. Bernard has willfully refused, or I'm sorry, the words we used were willful and knowingly failed to pay. It's an ongoing violation. And so what we have is two years have passed since the Louisiana Fourth Circuit even said the judgment's more than $12 million. And in their brief before this court, St. Bernard, starting on page 33, says this is a discretionary matter. Their view is as long as they don't appropriate money to pay the judgment, they don't have to pay. That is the problem. That is the denial of payment. This court has already addressed similar arguments outside of the takings context with government refusing to pay for their constitutional violations. The Gary W. case, which was cited by the Institute of Just for Justice at the end of their brief, makes it clear the procedural hurdle St. Bernard is trying to use to avoid payment, the anti seizure provisions, the failure to appropriate money. Those do not apply against federal claims asserting federal interest in a federal court. That's why we're here, because in Louisiana, maybe there's a remedy. Maybe there's not. But what we know is there's years and years more litigation, constitutional litigation over the validity of the Louisiana statutes and what can be collected and what cannot. But the federal courts do not have the same bar. The Freeman case cited in our opening brief also stands for this proposition. It cites Gates and several others. We don't want years and years more competent of litigation. At some point, the Fifth Amendment requires payment in Nick Fee. Scott, the U. S. Supreme Court that's on page 21 76 acknowledged and talked about the framers in the Fifth Amendment. The framers view was not that government could take property and delay years on end, not paying the judgment. That's contrary to what the framers intended, and that's what St Bernard is trying to do is to prevent payment. We have There's a very important Fifth Amendment policy at play. The policy is that government should not be able to place the burden of government on a handful of individuals. Here, the families that own Violet Dockport. It's a small company owned by families. The families for Violet Dockport have been forced to bear for 10 years now the cost of government expansion of the St Bernard Port system. That is a Fifth Amendment violation. They lost their property. They lost their customers. St Bernard took over the customer streams, took over the United States Navy business, and at the end of 10 years of having to deal with that, there's the Violet Dockport families are still being forced to fund a government loan with indefinite payment. That is the problem. This may be the same exact question that Judge Barksdale asked you at the very beginning of the argument, but if this were just a case that you had a commercial disagreement and you'd want a judgment, you would not be saying that you have a Fifth Amendment right to recovery in the Court of Appeals here, would you? That's correct, Judge Elrod. This is a different case because it is a takings case. There is a property right that the Fifth Amendment... So it's not a judgment. It is a judgment, but that's not why you're entitled to relief. You're entitled to relief because there's a specific clause in the Constitution that speaks to compensation. Is that right? That's correct, Your Honor. It's not just any judgment. It's a Fifth Amendment compelled judgment to payment, and there is a... Would the district court's decision be correct if you were just trying to seek collection of a judgment? Your Honor, I would not concede that point, but it would be a very different case. We'd have a much more difficult time. What we're seeking here is payment of the Fifth Amendment compensation, which Vought even draws that distinction between a Fifth Amendment compensation judgment and some other type of judgment. I mean, if you think about it, St. Bernard relies on the tort cases like Minton and other cases where this court has said there's not a property right to collect on a state court tort judgment, but those are very different circumstances. When we're dealing with, for example, a state court tort judgment, the state can define the limits of its tort. They can define the limits of liability. What the state of Louisiana cannot define is narrow the limits of the just compensation required by the Fifth Amendment. It's a completely different circumstance. Do you believe that you need to amend your petition, your complaint in any way? No. No, Your Honor. We do not believe we need to amend our petition. We have asked for leave to amend just in case, because there's been a suggestion that we didn't use the magic word that St. Bernard refused to pay as opposed to just hasn't paid. If we had to amend, we could also amend today to say it's been a year and whatever later, and they still haven't paid. But we don't believe any of those facts are necessary to actually amend the pleading to state a viable claim. We have a situation where government took property has not paid it, and you can see in their brief. You can also see this on page 60 of the record where they argue in the district court. Their view is they have discretion to decide if they ever want to pay the judgment. That's just not what the Fifth Amendment stands for, and that's the opposite of what the Supreme Court said in Nicklin page 21 76. The idea that government could take property and indefinitely refused to pay for it is offensive to the framers. It's offensive to the text of the Constitution, and, you know, we're dealing with a situation. Fortunately, this court hasn't seen very much ball. Sorry. Can you get injunctive relief or punitive damages that you led your honor? That that is not before the I don't think that is before the court. We do believe that we have pleaded for punitive damages, and I expect we're gonna end up with a if on a remand, we may have a significant fight over that. The district court said you can't get the punitive damages. Yes, and your honor, we haven't challenged that on this appeal. We have not raised the argument for punitive damages. What my client wants just to be clear is they want compensation after 10 years of being without the property without their customers paying for lawyers for 10 years. This is, believe it or not, the eighth appellate argument in this case, first one in the federal courts. They just want what the Fifth Amendment says we were entitled to, which is compensation. The Supreme Court in the Jocelyn case said the landowners are entitled to be paid and paid promptly in the excuse me in the, um, in the brag case. I'm sorry. The Supreme Court said without undue delay, and that's what we're seeking is payment. It's undue delays already happened, but we're seeking payment after Nick, which was decided after the Louisiana courts, um, entered their compensation decisions. In this case, there should be no more question the time for state delays, state procedural delays. Saint Bernard saying they have discretion invoking anti seizure statutes. That time is over. I want to ask what exactly is before us today. Do I understand correctly? The district court didn't adjudicate the delay issue so much as it just said this whole suit is barred under mitten. It judge how you were correct. The disco position is there's no claim no matter how long the delay is right. So if we were to reverse the delay issue would then need to be litigated whether there's been undue delay or not. Yeah, I think that is correct, Your Honor. I mean, our position is very. What is your theory about Minton? Why? Why is the district court wrong about Minton? Because Minton support judgment Minton is not a constitutional compelled takings judgment where there's a property right to get paid. If you think about Minton, it makes sense. An accident happened. Government didn't go out and try to cross a bus crash. I thought you just said that you weren't going to concede uh that a non takings judgment wouldn't be subject to a takings type case. I thought did I mishear you earlier? Your Honor, no, you did not mishear me. Um, in light of this court's precedent in Minton, I'm going to correct what I said earlier. You did hear me correctly, but a tort judgment is different. If we were in the state, what's puzzling to me is was there a judgment. The underlying judgment was obviously a tort case. Uh, as Minton explains, the issue before our court, was it a takings claim or just a procedural due process claim? Your Honor, as I read and remember that case, I thought it was a procedural due process claim. However, the court did talk about Louisiana law and said that in an ordinary Louisiana case, tort case, there's not a property right in a judgment. So that is a tort. My question, my question is, well, I'll just put it this way. I don't see the words just compensation anywhere in the Minton case. So I was a little surprised that you were, to me, you're giving up too much by saying that Minton forecloses just compensation claims uh as to non takings judgments, but leave open as to takings judgments. Uh, but anyway, it's your argument. And Your Honor, I apologize if it sounds like I'm trying to give that up. I was trying to walk a fine line because that's actually the case we don't need to today. The issue before the court is this is a takings judgment where there clearly is a property right to compensation. And we're asking the court to reverse the district court's decision so that we can proceed and hopefully get my client paid one day. Counselor, your time's up, but just answer this question. So what's the rule supposed to be? Once there is a judgment, the governmental entity has to pay within what, two days? Your Honor, the answer would come from the Supreme Court precedent. Uh, the judgment would have to be paid without undue delay is the language from the Bragg case. And there are cases where you can debate what undue delay delay is two days. I understand it's been what a year and two months or something since, uh, the judgment was was entered by the fourth Louisiana Fourth Circuit or fourth Intermediate Court of Appeals, whatever it's Your Honor, it's been a little over a year, I believe, or right around a year. The problem is, is if we wait any longer, St. Bernard's going to be here talking about limitations. I mean, we truly, it's every bar that comes up. You're telling me that once you have a judgment, Louisiana, if you don't ensure it's collected within a certain time, there's a limitations that prescribes collecting it. I don't believe there is, Your Honor, but I am confident. Believe I mean, that's my problem here. This is a Louisiana court judgment, a very substantial judgment. And in Louisiana, there must be some process for satisfaction of judgment, just like there is in every state in the union. And that's what it puzzles me. Why you're not taking that route when you have a judgment from a Louisiana court, Your Honor, the problem with the Louisiana procedures is it. You've already heard St. Bernard say it in their Apple. He's brief. You know, they have $91 million of net assets, but they say they don't have to appropriate any funds. Those are the barriers they raise in state court that can compel us to litigate the constitutionality of their procedures to bar payment of a compensation judgment. As the Gary W. K. Says, those same procedures do not apply in federal court. And so that is the process. The problem we're trying to get to the speedy, efficient remedy. The Fifth Amendment was supposed to provide. And what we're getting from St. Bernard is years and years more of litigation, including constitutional litigation of the very procedures they're going to try to use to obstruct payment. Your Honor. Thank you, Mr. Hastings. You save time for rebuttal. Thank you. Thank you, Your Honor. Miss Coker. Thank you. May it please the court, Ashley Coker with Cher Garner on behalf of St. Bernard Port and Drew Heafy. So as we appreciate it and as you've already picked up on, this is, in our view, a collection action. St. Bernard Port filed. When is your client going to pay? The client has. I mean, they filed in the record here. They filed this proceeding within three months of the full compensation package. When is your client going to pay? They are working. The record doesn't show, but they have been working on it for some time. And we've made different offers back and forth to Violet. And what do you mean by offers? There's a judgment for a specific amount of money. You're supposed to pay that amount. Well, meaning while we were trying to line up the funding, we'd offered to pay the interest payments and various things like this. And Violet didn't accept that. Counsel, we're not talking about settlement here. We're talking about collection or payment of the judgment that's due on the takings claim. And there was some representation made that your client had the position that it may not be in the record. And you can say it's not in the record, but your client had the position that unless it is. Well, frankly, Judge Elrod, Violet Dock has, there's nothing in the record here that Violet Dock's even requested an appropriation from St. Bernard Court. They're just saying that if we didn't write a check essentially the next day, that that automatically constitutes a violation and allows us to go underneath. That's not an answer to my question either, because we're well past the next day. So that's not the question. Is your client's position, and is it in the record that it's your client's position, that as long as the client doesn't ever allocate the money, it never ever has to pay? Same. The client, I'm sorry, the landowner, Violet, has to request an appropriation before the court has to pay. And your position is that that has not been done, and so it's never going to have to pay this judgment? The court is already working, has been working with Violet to resolve this regardless of the request. And they are making efforts to satisfy the judgment even now. So it does have an obligation to pay if this appropriation is not requested, or it doesn't have an obligation to pay? Well, I'll remind the court too that the it's not that Violet hasn't gotten any. Why is that your response? That's not the judgment. The judgment is a lot more. Correct. I'm just saying that Violet is not without... It's a meaningless response. It's not. I thought it's an either or. It has an obligation or it doesn't have an obligation. And I can't tell what your answer is. Violet Dock has to request an appropriation, and at that point it falls within St. Bernard Court's discretion to make the payment. Okay, so let's say it asks tomorrow. I apologize. Go ahead. So until such time as it specifically asks for the appropriation, it's your position that your client has no obligation to pay. Is that your position or not? We recognize that we have the obligation to pay it, and that's why the court is trying, is making efforts to satisfy the judgment. We've never said we don't have... Regardless of whether the allocation is requested. Yes. It's not a trick. The answer is yes to the question. Yes. Well, without the request for an allocation. In your brief at 24, you state St. Bernard Parish has assured the courts that it could pay the full amount of any just compensation award in favor of Violet Port. Now, you're not saying that this is not a just compensation award, are you? No, your honor. So you've got the money. So pay up. This is really ludicrous. You say they've got to request an appropriation, and then we have the discretion whether or not we're going to pay it. And then you say, but anyway, we're trying to satisfy the judgment right now. It's not making St. Bernard Parish look very good, to say the least. Your honor, Violet, I believe, is the one who said that we agreed that we were going to pay. And we have, like I say, we are making efforts to have $28, $22 million immediately available. That's why we were trying to work with Violet and other sources to make either some type of incremental payments or a final full payment. Well, if you're not willing to pay it, what is their satisfaction process in Louisiana to levy execution on the judgment and take everything you have until they get that money? What's the process? They can go to court and seek mandamus, although that may not be successful. Why wouldn't it be successful? They've got a valid judgment for some 30, whatever the balance is, 20, let's just say $23 million. You seize their property, you paid them $16 million, and now you're acting like you really don't have to pay them the balance of a valid judgment. Well, the Constitution prohibits, the Constitution, I'm sorry, the statutes require an appropriation of funding, and the constitutional provisions prohibit seizure of state property. So you can't do this execution on the state property if your property is indeed state property, and that would have to be litigated, right? If we don't satisfy the judgment. Yes. So when are you going to satisfy the judgment? Well, again, none of this is in the record, but we were working, we've been working on it. I'm asking for representation from you as the attorney for St. Bernard. When are you going to satisfy the judgment? We have been working on it actively all summer, Your Honor. I don't have a date for you. But you don't need the request for an appropriation. You're not insisting on that. You're trying to pay it off. We are trying to pay it off without the request for an appropriation. My only point there was that we talked earlier with Mr. Hastings about the fact that there are processes, including requesting an appropriation, which would be step one, and Violet Dock hasn't even done that. But you're not, that's not the reason y'all haven't paid here. You said that you have this obligation anyway. So that's not the reason you haven't paid. Not you personally. I understand. Thank you. The court is trying, correct. That is not the reason, but they also haven't done it. And that is a procedural step that Violet could have at least taken instead of coming to federal court in just a few short months after the procedure. Let's say they make the request that you've set forth. They do that tomorrow. Will they get a check by January 1, 2021? I don't, I don't know. They could get a potential. What do you think they do? I think it would depend on whether you're talking about the full amount or not. That's what the court's trying to work. What's the full amount? They want the full amount. They're entitled to the full amount. Correct. But potentially we could work a plan where we do pay the full amount with judgment, but I'm sorry, with interest, but just over time. So again, we had previously offered to pay annual interest while we're working on paying off the full judgment. And that was rejected by Violet. Well, they don't have to agree to a payment plan. I understand. Do you have a legal argument before this court, counsel? Well, the legal argument was that they brought this case only pursuant to following the new versus town of Scott. Pennsylvania has, does not have applicability in this case. That is a case where inverse condemnation proceedings were, can be instituted. It reversed a prior decision in Williamson County that said that parties must exhaust state court remedies first. And both of those cases, Nick's and Nick and Williamson County are regulatory taking cases. And the thrust of those regulatory or inverse condemnation, indirect condemnation cases, thrust of all of those cases is that is to protect a landowner when there is a, a taking by indirect action to make sure that they have a process and that they have a pathway for just compensation. And that's what Nick is setting out. And that is what Violet Dock's complaint says that they are basing their claims on the duty in paragraph 28 of their complaint sets out the payment failure for payment, citing the new Nick case. So our point, our argument is that Nick does not govern this type of proceeding. Nick was an inverse condemnation action that required exhaustion of remedies. You acknowledge the fifth amendment governs the staking, right? Yes. Let's put aside Nick. The fifth amendment, do you acknowledge that the fifth amendment means you can't just take somebody's property without paying? Correct. Okay. And you acknowledge that when it says payment of just compensation, it's not just a paper judgment. You actually have to pay on that judgment. Do you acknowledge that? We do. And that's what we're working on. So our, our. Ms. Coker, have you been involved in this litigation throughout? Yes, your honor, essentially. So, uh, so you've been, you've been on it from the get go. You've been working on this for over 10 years with the exception of the first six months or so. Yes. All right. And, uh, as I understand it, once the on remand, the Louisiana intermediate court set the amount owed, did you file an appeal from that? Yes, both parties did. And what happened to that appeal? The Louisiana Supreme court denied. Well, it wasn't an appeal because it was at the fourth circuit. We had to seek supervisory rents and the Supreme court denied rents from both parties. All right. So let's go back to what, what is before us, you know, the district court, uh, as I recall, dismissed the motion, uh, granted your motion to dismiss. Was that legally correct? And if so, why? Yes, because again, viola docs, pleadings and papers were premised on the Nick case, which said that it allowed it to come into federal court to enforce this suit. And our position is that, and the district court correctly held that Nick didn't convert 19 section 1983 into, um, into a collection tool. So yes, we agree. We believe that the district court's opinion was correct and that the case was properly dismissed. If we don't believe this is a collection action, we believe this is a constitutional action under 1983. Do you lose? No, because I don't think that even still, Violet hasn't attempted to collect from us. They haven't sought the appropriation from us. We've been, we've recognized obligation for dismissal. That's not the issue that that would be litigated in the proceeding. Do you lose this particular appeal? If we don't think this is just a collection action on a  constitutional action under 1983? No, because it's still, the Nick case is still premised on cases that there are no valid public purposes asserted. We have started a valid public purpose, even in vote. There was a, the ruling was that there was no valid public purpose, and that was the premise of the case. So what if there was no Nick case, even with no Nick case, we're under Williamson County, or we're not even under Williamson County. Why, why would you not lose? Because we have already, I'm struggling, I'm coming, because we didn't, Violet Dock still has a valid just compensation award. They can attempt to collect it from the court through seeking an appropriation. Go ahead. Mr. Judge, who has a question? Well, let me ask a hypothetical question, because as I understand it, this is on a motion to dismiss. So it's really just a pure legal issue. We don't really need to worry about the facts of any particular claim. So let me ask hypothetical. Government takes property, and it is found by the state court proceeding, either before Nick or after Nick, I honestly could not care less about Nick. The state court is where it's adjudicated, and the court comes up with a big award as required under the Fifth Amendment. And that governmental entity refuses to pay. It will never pay. It makes that clear for all to see. Are you saying there's nothing that could be done in a federal court? Or do you acknowledge that there would be a federal court remedy? If there is a true refusal to pay, then perhaps there is a federal court remedy. There would, once there is a denial by the Daking authority and a true refusal to pay, then there may be a Fifth Circuit, a Fifth Amendment remedy, but that's not the case here. Okay. So it sounds like your complaint is sort of a pleading issue. Because I understand you're going to dispute that you've ever denied. But I think, as I understand Mr. Hastings, they think that you have denied or effectively denied. So if they were to plead or to be granted leave to amend the plea that there has been a refusal to pay, then that's something that should proceed and a motion to dismiss should be denied? I'm sorry. If they were to have leave to amend, can you please say that again? I'm sorry. So my hypothetical was the obstinate government entity. Correct. I think you're saying, yes, if it's a truly obstinate governmental entity, then there would be a federal cause of action along the lines of what's been filed here. It sounds like your dispute is that you are not that difficult entity. You are willing to pay. Correct. Yes. And at the time they filed, it had only been three months. So then it sounds to me that's a fact issue. As long as Violet has pled properly an allegation that you refuse to pay, I get that you deny that, but that's not a motion to dismiss issue, I don't think. I think that's a fact issue. Well, again, the pleadings and the briefing were based on the decision in NIC, which is why the district court decided it versus this factual complaint. Yeah, I'm not sure that answers my question. Perhaps. It doesn't matter to me how they pled it. My point is, if they were to plead properly, uh, that you took their property, they got a good judgment from a state court, but you just refused to pay that judgment. I think you've already conceded that that would be a federal cause of action. Correct. I think the only question now is, did they plead it? If so, then it shouldn't be denied. And if they didn't plead that, then they just need, perhaps we should grant them, uh, I think their alternative appellate remedy is, uh, leave to amend. Correct. You're right. Okay. Do you have anything further, Ms. Coker? No, ma'am. I'd like to ask a question, Judge. Uh, assuming that, uh, Mr. Hastings files his request with your client this afternoon by email, uh, what is the normal process timeline for acting on appropriation request? What what happens? Well, I think it would depend for St. Bernard Port itself for the entity. Yes, it would depend. I didn't know if you're asking under state law or for the port in particular. Um, with it would have to, frankly, they don't have very many requests for appropriations, and it would it depends on the size of the judgment. And again, we've been working on because of the size of it have been working on how to get that paid for some time frame. So I don't know the lawyer for the for St. Bernard. Do you? Do you handle their administrative matters of that type? Also, do you represent him in that? No, sir. Does it have in house counsel? It does not. All right. So who who who advises them on requests for appropriation? Well, they they seek different counsel in different circumstances. There have been other times they've had requests that they did not come to our office. They've used other local counsel. It just depends on the particular requests. And again, I don't believe it happens very often. They do. One final question, at least for me, going back to my hypothetical about the obstinate rental entity. If the government only is not only obstinate but is actually unable to pay, is the proper results in your mind to return the property to the owner? No. Well, we haven't we I don't think that's the situation here. We haven't said that that's not what I'm not saying it's a situation here. I specifically said hypothetical. Hypothetically, a government only takes property. There's a just compensation award, but the government is not only unwilling to pay, unwilling to pay, they're unable to pay. It's insolvent. Would the proper remedy be? I assume that there's no valid taking. And so the property should be returned. I suppose that would have to be litigated amongst all of its various creditors. And what I'm trying to forecast is you may have to return this property if you don't pay. I appreciate that. I appreciate where you're telling us. Okay, Miss Cooker, I think we have your argument. Mr Hastings, do you have any rebuttal? You're on mute again, sir. Your Honor. Can you hear me? Yes, sir. You're on mute again. I don't know what happens that you keep getting on mute. You're off of mute now. Sorry. Sorry, Your Honor. I actually did anything, sir. Your Honor. I have very briefly the time for ST Bernard Port to have raised funds was back in 2010 when they took the property and were warned it was worth far more than ST Bernard was willing to pay. We've alleged that ST Bernard had $91 million in net assets, plenty of money to pay the judgment. Today, we have heard a new excuse that we didn't make the proper request to ST Bernard. That's outside the record. First time that has been raised. But paragraph 19 of our complaint says we made demand because we did. We've been trying to get paid for a long time. This argument that the proper demand wasn't made is brand new today. My client's entitled to be paid. I had assumed you didn't make that request because of some procedural um posture. Are you going to make the request today or tomorrow? Your Honor, if there's some secret handshake or something we have to do, we'll do it. My client wants to get paid. That's what we've been saying for a long time. And we're representing that you will make the request by say Monday. Yes, Your Honor. And my co-counsel is reminding me that they did make the request. Okay, when? It was new. It was made after the judgment was entered. We've even been to a mediation with ST Bernard. Obviously, I'm not going to talk about it. So your complaint says you did make the request already. Paragraph 19, Your Honor. Well, you said demand. There's a difference between demand and request for appropriation. We said despite amicable demand, Your Honor. If there is a formal process, this is the first they've raised this today. Well, I suggest you find out what the process is and do it lickety split. I completely agree, Your Honor. And it would have been nice to hear this beforehand. Can I ask you the same question I asked the other side? Uh, in the event that they are simply unwilling, unable to pay, do you want the property back? Uh, and Judge how I'll actually want to answer both of you. The questions you're asking the other side. The problem with getting the property back at this point is they've had ST Bernard's been on it for 10 years. They've had our customers for 10 years. Our revenues for 10 years. Getting the property back now just starts a damage trial of everything that's happened over the last 10 years. So let me be clear. I understand it's not ideal. I understand it's not your number one request. In fact, I read your complaint. You don't ask for this. You ask for everything else other than the injunctive relief, forcing the return of property. My point is just it would seem to me in a truly obstinate government agency case that that would be, uh, sort of fail safe remedy. There simply is no taking allowed per the expressed terms of the Fifth Amendment absent just compensation. And you're complaining that you're not getting absent. You're not getting just compensation. So you should get your property back. And your honor, that is a potential remedy. It's clearly not the ideal one at this point. They're not waiving that, and that would be an issue for remand. The other comment, Judge Hall wanted to respond to is you asked Miss Coker a hypothetical. And, uh, my answer to your hypotheticals, it sounded an awful like lot like this court's decision involved. And so we believe that the court has already recognized that this type of claim may go forward. All my client wants to do is get paid on this judgment. It's been deprived of its property for many, many, many years. Now, uh, if we need to make a demand today, we will do it. If we need a secret handshake, we will do it. We just want to get paid, which is what the Fifth Amendment requires. What's worth? I agree with you that bought is a potentially helpful case for you. That's why I was expressing surprise that you didn't mention in your break. You're in your honor. It's a very important case for us. And if it was not mentioned in the opening brief, it's my apologies and an oversight. Judge Elrod, would it? Would it serve a purpose? Uh, if you required the parties to keep us posted on a weekly basis of the request and what is taking place so we know what's going on, and perhaps they can resolve it before we write an opinion that perhaps neither one of them is gonna like. Um, what? Okay. Um, council are to, um, provide us a status update. Um, in seven days. Um, and thereafter, until the court ceases the request. Any questions? No, Your Honor. Thank you. Thank you. Thank you. This matter is, um, submitted, and the court will stand adjourned until tomorrow morning. Thank you.